PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KATHY P. MINOR,

        *Plaintiff-Appellant,*

v.

BOSTWICK LABORATORIES,
INCORPORATED,

        *Defendant-Appellee.*

No. 10-1258

SECRETARY OF LABOR; EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,

        *Amici Supporting Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Henry E. Hudson, District Judge.
(3:09-cv-00343-HEH)

Argued: December 6, 2011

Decided: January 27, 2012

Before TRAXLER, Chief Judge, and DUNCAN and AGEE,
Circuit Judges.

Reversed and remanded by published opinion. Judge Duncan
wrote the opinion, in which Chief Judge Traxler and Judge
Agee joined.

## COUNSEL

**ARGUED:** James B. Thorsen, MARCHANT, THORSEN, HONEY, BALDWIN & MEYER, LLP, Richmond, Virginia, for Appellant. Nickole Carrieanna Winnett, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amici Supporting Appellant. King Fitchett Tower, SPIL-MAN, THOMAS & BATTLE, PLLC, Roanoke, Virginia, for Appellee. **ON BRIEF:** P. David Lopez, General Counsel, Lorraine C. Davis, Acting Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Barbara L. Sloan, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C.; M. Patricia Smith, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amici Supporting Appellant. Carrie M. Harris, SPILMAN, THOMAS & BATTLE, PLLC, Roanoke, Virginia, for Appellee.

## OPINION

DUNCAN, Circuit Judge:

Appellant Kathy Minor appeals from the Rule 12(b)(6) dismissal of her claim under the Fair Labor Standards Act's ("FLSA") antiretaliation provision, 29 U.S.C. § 215(a)(3). The district court held that complaints made within a company are unprotected by the antiretaliation provision, and that because Minor alleged only that her termination was in retaliation for reporting alleged FLSA violations internally to her employer, her complaint failed to state a claim. Because we find that intracompany complaints may constitute protected activity within the meaning of § 215(a)(3), we reverse and remand for further proceedings.

## I.

## A.

Minor was hired by appellee Bostwick Laboratories, Inc. ("Bostwick") as a medical technologist on December 24, 2007.[1] She remained an employee of Bostwick until May 12, 2008. During this time, she claims to have consistently met or exceeded her job requirements. To wit, Minor reports receiving only satisfactory or above average ratings at her final performance review on April 30, 2008—12 days before her firing.

On May 6, 2008, Minor and several other members of her department met with Bostwick's chief operating officer, Bill Miller. The purpose of the meeting was to call to Miller's attention the fact that Minor believed her supervisor, Dawn Webber, had willfully violated the FLSA. Specifically, Minor informed Miller that Webber routinely altered employees' time sheets to reflect that they had not worked overtime when they had. At the conclusion of the meeting, Miller told the group that he would look into the allegations.

The following Monday, May 12, 2008, Bostwick terminated Minor's employment. Miller and human resources manager Lori Esposito explained that the reason for Minor's firing was that there was "too much conflict with [her] supervisors and the relationship just [was not] working." J.A. 6. When Minor further questioned the rationale behind her termination, Miller and Esposito explained they had met with her co-workers and "had determined that she was the problem." J.A. 7. Minor asserts that she never had any conflict with her supervisors, that she had never been reprimanded or written

---

[1]Because this case comes before us as a dismissal under Rule 12(b)(6), "we accept the allegations of the plaintiff's complaint as true." *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307 (4th Cir. 2007). This section therefore recounts the facts as alleged in Minor's complaint.

up, and that the alleged conversation between Miller, Esposito, and her co-workers never took place.

## B.

On June 1, 2009, Minor filed a complaint against Bostwick in the United States District Court for the Eastern District of Virginia. Relevant to this appeal, Minor alleged that Bostwick had terminated her employment in retaliation for engaging in protected activity as defined by the FLSA's antiretaliation provision, 29 U.S.C. § 215(a)(3).[2] The alleged protected activity consisted of Minor's report to Miller concerning the alteration of the time sheets and the resulting lack of overtime pay during the aforementioned May 6 meeting. Minor sought compensatory damages, punitive damages, and attorney's fees.

On July 6, 2009, Bostwick filed a motion to dismiss the retaliation cause of action under Rule 12(b)(6) for failure to state a claim. The district court framed the issue as whether "an employee's informal, intra-company complaint regarding possible FLSA violations by her employer qualif[ies] as a protected activity under . . . the FLSA's anti-retaliation provision." *Minor v. Bostwick Labs., Inc.*, 654 F. Supp. 2d 433, 434 (E.D. Va. 2009). It answered the question in the negative, reasoning that although our prior precedent did not firmly establish whether intracompany complaints were protected under the FLSA's antiretaliation provision, the plain language of the statute indicated that a formal, official proceeding was required to invoke the clause's protection. Because Minor alleged only that she was discharged in retaliation for reporting alleged FLSA violations internally to Bostwick management, the district court granted Bostwick's motion to dismiss on August 10, 2009. Minor timely appealed.

---

[2]Minor also alleged that Bostwick had failed to adequately compensate her and other similarly situated employees for overtime work in violation of 29 U.S.C. § 207(a). She voluntarily dismissed this cause of action after reaching a settlement with Bostwick.

## II.

The sole question presented by this appeal is whether an employee's complaint lodged within her company—as opposed to a complaint filed with a court or government agency—may trigger the protection of the FLSA's antiretaliation provision. This is an issue of first impression in this circuit.

Section 215(a)(3) of the FLSA makes it unlawful for a covered employer to "discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." Minor contends that an employee who complains of FLSA violations to her employer is protected from retaliatory firing because she has "filed any complaint" within the meaning of the antiretaliation provision.

In support of her position, Minor argues that the Supreme Court's recent decision in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), requires us to hold that intracompany complaints are protected activity within the meaning of § 215(a)(3). Bostwick, in turn, contends that *Kasten* has no effect on this appeal and that our prior precedent—specifically *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360 (4th Cir. 2000)—compels the conclusion that intracompany complaints are unprotected. In the alternative, both parties argue that the plain language of the statute supports each of their respective positions. Without the benefit of *Kasten*, the district court found Bostwick's plain-language argument persuasive, dismissing Minor's complaint because of its conclusion that the plain meaning of § 215(a)(3) is that intracompany complaints are not protected activity.

We review the district court's Rule 12(b)(6) dismissal of Minor's complaint de novo. *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). Upon review, we dis-

agree with the district court that the plain meaning of § 215(a)(3) dictates that intracompany complaints are not protected activity. Instead—although we do not believe *Kasten* is directly controlling—we find the Supreme Court's reasoning in that case to be persuasive here. Following it, we hold that although the language of § 215(a)(3) is ambiguous, the remedial purpose of the statute requires that it protect from retaliation employees who file intracompany complaints.[3]

## A.

We begin by examining the Supreme Court's decision in *Kasten* and its effect on the question presented here. In *Kasten*, the Supreme Court considered whether the petitioner's oral complaints to his employer qualified as protected activity under the FLSA's antiretaliation provision. 131 S. Ct. at 1330. In doing so, it began with the text of the statute. *Id.* at 1331. Focusing on the word "filed," the Supreme Court took into consideration dictionary definitions of the word; its use in state statutes, administrative regulations, and judicial opinions; and other appearances of the word in the FLSA. *Id.* at 1331-32. It concluded upon review that the word "filed" does not unambiguously require a writing. *Id.* at 1333. It also found that a comparison of the language in § 215(a)(3) to broader language in other statutes' antiretaliation provisions did not answer the question of whether Congress intended to limit the protection of the FLSA's antiretaliation provision to written complaints. *Id.* at 1333. It concluded that "the text, taken alone, cannot provide a conclusive answer to [the] interpretive question." *Id.*

After determining that the text of § 215(a)(3) was ambiguous, the Supreme Court went on to conclude that Congress intended the antiretaliation provision to cover oral complaints.

---

[3]We make plain, however, that we conclude only that Minor's complaint states a claim sufficient to survive a motion to dismiss. We express no view regarding the merits.

*Id.* First, it found that the FLSA's remedial purpose required a broad interpretation to achieve its basic objectives. *Id.* at 1333-34. Second, it gave a "degree of weight" to the consistent position of both the Secretary of Labor and the EEOC that oral complaints are protected activity within the meaning of § 215(a)(3). *Id.* at 1335. These two points buttressed its decision that oral complaints could qualify as protected activity under the statute. *Id.* at 1336.

The Supreme Court did, however, stress that an employer needed fair notice as to when a complaint had been filed. *Id.* at 1334. Thus, it held that "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 1335. Because the district court had not considered whether the petitioner's oral complaint to his employer met this notice standard, the Supreme Court remanded with instructions to apply the standard. *Id.* at 1336.

Significantly for our purposes, *Kasten* expressly declined to address the question of whether an intracompany complaint could qualify as protected activity under the FLSA.[4] *Id.* It did, however, state that "insofar as the antiretaliation provision covers complaints made to employers," limiting the scope of protected activity to written complaints would "discourage the use of desirable informal workplace grievance procedures to secure compliance with the [FLSA]." *Id.* at 1334. It also framed the need for fair notice in terms of whether a "reasonable employer" would understand a particular complaint to be an assertion of rights under the FLSA. *Id.* at 1335. The dissent asserted that in doing so, the majority actually decided the question we confront here. *Id.* at 1341 (Scalia, J., dissenting).

---

[4]It did so because Saint-Gobain failed to raise the issue of whether intracompany complaints are protected in response to Kasten's petition for certiorari. *Kasten*, 131 S. Ct. at 1336.

It pointed out that because "[f]iling a complaint with a judicial or administrative body is quite obviously an unambiguous assertion of one's rights," fair notice would only be a concern if intracompany complaints were covered. *Id.* Minor relies primarily upon this observation to argue that the only logical interpretation of *Kasten* is that its holding dictates that intracompany complaints are protected activity under § 215(a)(3).[5]

Notwithstanding the dissent's argument, we take the *Kasten* majority at its word. Therefore, although we find much of its reasoning applicable to our analysis, *Kasten* did not settle the question of whether intracompany complaints are protected activity within the meaning of § 215(a)(3), and consequently does not directly control the outcome of this case.

B.

We next consider Bostwick's contention that our precedent dictates that intracompany complaints are insufficient to state a claim under the antiretaliation provision of the FLSA. In so arguing, Bostwick relies primarily upon our decision in *Ball*.[6] *Ball*, however, is distinguishable on its own terms.

---

[5]Minor also argues that, because the petitioner in *Kasten* alleged orally complaining to his employer about FLSA violations, the Supreme Court necessarily found that intracompany complaints were protected by the antiretaliation provision when it vacated the holding that his complaints were unprotected. This contention is incorrect. Specifically, it overlooks the fact that the Supreme Court did not decide whether the petitioner's activity was protected under the FLSA; the Court merely held that the Seventh Circuit was wrong to conclude that oral complaints were categorically unprotected under § 215(a)(3). The Supreme Court remanded for application of the new standard announced in *Kasten*, and we therefore do not have definitive guidance as to whether the petitioner's intracompany complaint in that case would have been protected had the district court analyzed it using the correct test.

[6]Bostwick also seeks to rely on our unpublished per curiam decision in *Whitten v. City of Easley*, 62 F. App'x 477 (4th Cir. 2003). "Citation of this Court's unpublished dispositions issued prior to January 1, 2007 . . . is disfavored." 4th Cir. R. 32.1. Unpublished decisions are also not binding upon us. Therefore, we decline to address the arguments Bostwick bases upon *Whitten*.

As a preliminary observation, we note that § 215(a)(3) protects an employee who has engaged in any one of three separate activities: "[1] fil[ing] any complaint or [2] institut[ing] or caus[ing] to be instituted any proceeding . . . or [3] . . . testif[ying] or [being] about to testify in any such proceeding." The case before us requires that we decide whether an employee engaged in protected activity by "fil[ing] any complaint." In *Ball*, we considered what constituted "testify[ing] in any such proceeding." 228 F.3d at 363. We specifically noted in *Ball* that our opinion did not purport to construe the "complaint clause." *Id.* at 363 n.*.

The issue in *Ball* was whether an employee's "anticipated refusal to testify in a threatened lawsuit as his employer wished" was protected activity under the "testimony clause" of the antiretaliation provision. *Id.* at 363. Appellant Peter Ball discussed with his employer the possibility that a different employee would file suit against the company under the FLSA. Ball alleged he was fired because, when his employer asked Ball to testify in a certain manner if the lawsuit were to proceed, Ball declined. He claimed this activity was protected under § 215(a)(3).

In this context, we held that the plain meaning of "about to testify in any such proceeding" was not broad enough to apply to the facts alleged in Ball's complaint. We stated that "the 'proceeding' necessary for liability under the FLSA refers to procedures conducted in judicial or administrative tribunals." *Id.* at 364. We explained that this was the case because "[a]s used in the [FLSA], 'proceeding' is modified by attributes of administrative or court proceedings; it must be 'instituted,' and it must provide for 'testimony.'" *Id.* We determined that "institut[ing]" a proceeding "connote[d] a formality that does not attend an employee's oral complaint to his supervisor." *Id.* Similarly, we found the fact that testimony could be given at the "proceeding" referenced in the statute reinforced the conclusion that the proceeding was necessarily a formal one. *Id.* With all of this analysis as background, we concluded:

> By referring to a proceeding that has been "insti-
> tuted" and in which "testimony" can be given, Con-
> gress signaled its intent to proscribe retaliatory
> employment actions taken after formal proceedings
> have begun, but not in the context of a complaint
> made by an employee to a supervisor about a viola-
> tion of the FLSA.

*Id.* Although this final sentence, read in isolation, could be misconstrued as applying to the entirety of § 215(a)(3), the context makes it clear that the *Ball* court was referring to Congress's intent to limit the reach of the *testimony clause*, signaled by its use of the words "instituted" and "testimony."

Thus, the outcome in *Ball* does not dictate the result in the case before us. Although *Ball* clearly requires a proceeding before a judicial or administrative body to be instituted before an employee's activity of "testify[ing] . . . in any such pro-ceeding" qualifies for protection under the antiretaliation pro-vision, this holding does not apply to an employee's allegation that he was retaliated against for "fil[ing] any com-plaint." Indeed, *Ball* supports this conclusion. As noted above, the opinion specifically stated that Ball did "not invoke the complaint clause of 29 U.S.C. § 215(a)(3), relying instead on the testimony clause." *Ball*, 228 F.3d at 363 n.*. It also recog-nized that we had "construed the scope of similar complaint-clause language in another context" to include intracompany complaints. *Id.* As such, it is plain that *Ball* left open the ques-tion of whether intracompany complaints may constitute pro-tected activity under the FLSA's complaint clause.

### C.

As neither *Kasten* nor *Ball* is directly controlling, we turn to an independent review of the language of § 215(a)(3). When interpreting a statute, we "first and foremost strive to implement congressional intent by examining the plain lan-guage." *Barbour v. Int'l Union*, 640 F.3d 599, 610 (4th Cir.

2011). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). "In interpreting the plain language of a statute, we give the terms their 'ordinary, contemporary, common meaning.'" *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011) (quoting *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 515 F.3d 344, 351 (4th Cir. 2008)).

The United States Secretary of Labor and the Equal Employment Opportunity Commission ("EEOC") (collectively "amici"), arguing as amici curiae in support of Minor, contend that the plain meaning of § 215(a)(3) is that an employee's intracompany complaint regarding violations of the FLSA is protected activity. Bostwick counters that the plain meaning of the statute requires that an employee undertake a more formal action than an intracompany complaint to trigger protection of the antiretaliation provision.

Unlike the district court, we have the benefit of the Supreme Court's recent consideration of the plain meaning of "filed any complaint" from *Kasten*. *Kasten* focused the majority of its plain-language analysis on the meaning of the word "filed"—most important to deciding whether an oral complaint could trigger protection of the antiretaliation provision—rather than the "any complaint" language more relevant to our inquiry. It did observe, however, that "even if the word 'filed' . . . might suggest a narrow interpretation limited to writings, the phrase '*any* complaint' suggests a broad interpretation that would include an oral complaint." 131 S. Ct. at 1332. Nevertheless, it concluded that "the three-word phrase, taken by itself, cannot answer the interpretive question." *Id.*

Amici argue that because of its broad scope, the phrase "any complaint" requires, by its plain meaning, that intracompany complaints fall within the protection of the antiretaliation provision. They seek to distinguish the Supreme Court's

finding that the language is ambiguous by pointing out that *Kasten*'s analysis focused primarily on the word "filed" and dealt with oral complaints, not intracompany complaints.

We do not find these arguments persuasive. Although amici are correct that the language "any complaint" is broad, it is this very broadness that precludes their plain-language argument. The ordinary meaning of the phrase "any complaint" does not include a limiting factor, and plainly, not *every* complaint can trigger the protection of the antiretaliation provision. The Supreme Court expressly recognized the need for such a limiting principle in *Kasten*, holding that "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 1335. Amici do not argue that the plain meaning of "complaint" includes such a limit. Including the word "filed" in our consideration does not provide us with further guidance as to whether the plain meaning of the provision covers intracompany complaints, given that the ordinary meaning of "filed" has no connection to where or with whom the act of filing is done. Therefore, as the Supreme Court in *Kasten* did with regard to whether oral complaints are covered by § 215(a)(3), we conclude that the language "filed any complaint" is ambiguous with regard to whether intracompany complaints are protected activity under § 215(a)(3).

As such, we also disagree with Bostwick's contention that the plain meaning of the FLSA's antiretaliation provision is that it does *not* cover intracompany complaints. The district court held as much, reading the text of § 215(a)(3) as a whole and concluding that because instituting a proceeding "seems to require that an employee's complaint result in or relate to some formal, official procedure or investigation," Minor's verbal complaint to her employer was not a protected activity within the meaning of the antiretaliation provision.[7] *Minor*,

---

[7]The district court also stated that the plain meaning of "filed" indicated that "an informal, internal, verbal accusation cannot possibly be construed

654 F. Supp. 2d at 439 (internal quotation marks omitted). Because we believe that the phrase "filed any complaint" is correctly considered separately from the remainder of § 215(a)(3), we disagree with the district court's analysis.

In deciding to analyze the complaint clause separately, we follow the canon of construction "that terms connected by a disjunctive be given separate meanings." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). As previously noted, the FLSA's antiretaliation provision protects an employee who has "filed any complaint *or* instituted or caused to be instituted any proceeding . . . *or* has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3) (emphasis added). By phrasing the provision in this fashion, Congress has indicated its intent that we consider each of these categories of protected activity independently. The Supreme Court followed this interpretive directive in *Kasten*, focusing solely on the language "filed any complaint." *See* 131 S. Ct. at 1331-33. For this reason, we find the district court's plain-meaning conclusion incorrect.

Finally, we consider Bostwick's argument that a comparison of the statutory language in the FLSA's antiretaliation provision to the more broadly written antiretaliation provision contained in Title VII, 29 U.S.C. § 2000e-3a, requires that we narrowly interpret § 215(a)(3). We discussed this comparison in the context of the testimony clause in *Ball*, concluding that the "cause of action for retaliation under the FLSA is much more circumscribed." 228 F.3d at 364. The Supreme Court also considered this argument in *Kasten*, however, in the context of whether "filed any complaint" includes oral complaints and determined that "the use of broader language elsewhere *may* mean (1) that Congress wanted to limit the scope of the phrase before us to writings, or (2) that Congress did not

as the *filing* of a complaint." *Minor*, F. Supp. 2d at 439. In light of *Kasten*, we disagree.

believe the different phraseology made a significant difference in this respect." 131 S. Ct. at 1332-33. Moreover, we recognize that the FLSA was enacted well before Title VII. To the extent that Bostwick's argument rests on the premise that Congress would have modified the language of the FLSA had it wished that statute's antiretaliation provision to be read as broadly as the antiretaliation provision in Title VII, we observe that "[i]naction . . . is a notoriously poor indication of congressional intent." *Schweiker v. Chilicky*, 487 U.S. 412, 440 (1988). At best, the implications of the difference in the language of the FLSA and the language in Title VII are unclear, and the comparison does not solve the interpretive problem before us.

Because we find that "filed any complaint" is ambiguous as to whether intracompany complaints are protected activity under the FLSA, we must move to other interpretive tools.

## D.

The Supreme Court in *Kasten* determined that oral complaints could constitute protected activity within the meaning of § 215(a)(3) based upon "functional considerations." 131 S. Ct. at 1333. In light of the ambiguous nature of § 215(a)(3)'s "filed any complaint" language, we find that these same functional considerations dictate that intracompany complaints qualify as protected activity within the meaning of the FLSA's antiretaliation provision.

### 1.

We first consider the basic goals of the FLSA. Consistent with other authority, we conclude that, because of the statute's remedial purpose, § 215(a)(3) must be interpreted to include intracompany complaints.

The FLSA was enacted to combat "labor conditions detrimental to the maintenance of the minimum standard of living

necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). "The central aim of the Act was to achieve . . . certain minimum labor standards." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). To ensure compliance with the provisions enacted to serve this purpose, Congress "chose to rely on information and complaints from employees seeking to vindicate rights claimed to have been denied." *Id.* It included the antiretaliation provision in recognition of the fact that "fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." *Id.* In light of these objectives, the Supreme Court has consistently held that the FLSA "must not be interpreted or applied in a narrow, grudging manner." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). We likewise recognized in *Ball* that where the statutory language permits, "we are instructed to read the FLSA to effect its remedial purposes." 228 F.3d at 363-64.

With the statute's purpose in mind, *Kasten* stated that "an interpretation [of § 215(a)(3)] that limited the provision's coverage to written complaints would undermine the [FLSA's] basic objectives." 131 S. Ct. at 1333. The Supreme Court further observed that such a limitation on the scope of the antiretaliation provision would circumscribe flexibility in enforcing the FLSA. *Id.* at 1334. As a supporting point, the Supreme Court stated that "insofar as the antiretaliation provision covers complaints made to employers . . . , [limiting the scope of § 215(a)(3)] would discourage the use of desirable informal workplace grievance procedures to secure compliance with the Act." *Id.* Following this reasoning, we conclude that an interpretation that limits § 215(a)(3)'s coverage to complaints made before an administrative or judicial body would overly circumscribe the reach of the antiretaliation provision in contravention of the FLSA's remedial purpose. Allowing intracompany complaints to constitute protected activity within the meaning of § 215(a)(3), on the other hand, comports with the statute's objectives as described by Con-

gress's findings and the Supreme Court's interpretation of those findings.

Amici offer several persuasive policy arguments in support of this conclusion. They point out that protection of internal complaints encourages resolution of FLSA violations without resort to drawn-out litigation—and that failure to protect internal complaints may have the perverse result of encouraging employers to fire employees who believe they have been treated illegally before they file a formal complaint. Our sister circuits have voiced the same concerns in concluding that § 215(a)(3) protects intracompany complaints. *See Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 43 (1st Cir. 1999) ("By protecting only those employees who kept secret their belief that they were being illegally treated until they filed a legal proceeding, the Act would discourage prior discussion of the matter between employee and employer, and would have the bizarre effect both of discouraging early settlement and creating an incentive for the employer to fire an employee as soon as possible after learning the employee believed he was being treated illegally.").

Indeed, the majority of circuits to consider the question of whether intracompany complaints are protected activity within the meaning of "filed any complaint" have answered in the affirmative, basing their decisions on the FLSA's remedial purpose.[8] *See, e.g.*, *Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 626 (5th Cir. 2008) ("We adopt the majority rule, which allows an informal, internal complaint to constitute protected activity under Section 215(a)(3), because it better

---

[8]For the reasons stated above, we choose to align ourselves with the circuits that have based the conclusion that intracompany complaints are protected activity under § 215(a)(3) on the statute's remedial purpose, rather than with the Seventh Circuit, which reached the same conclusion based upon the plain language of the statute. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 570 F.3d 834, 838 (7th Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 1325 (2011) ("[T]he plain language of [§ 215(a)(3)] indicates that internal, intracompany complaints are protected.").

captures the anti-retaliation goals of that section."); *Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999) (en banc) (finding that § 215(a)(3) covered internal complaints based on its remedial purpose); *Valerio*, 173 at 42 (same); ; *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) (same); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (same); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir. 1975) (same); *see also EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992) (holding that an employee's complaints to her employer were sufficient to trigger protection of the FLSA's antiretaliation provision without explaining its rationale). *Cf. Brock v. Richardson*, 812 F.2d 121, 124-25 (3d Cir. 1987) (holding that, because of the FLSA's remedial purpose, a retaliatory firing based on an employer's belief that an employee had filed a complaint—even when he had not—was prohibited by § 215(a)(3)). Thus, we adopt the majority view by holding that the remedial purpose of the FLSA requires intracompany complaints to be considered protected activity within the meaning of its antiretaliation provision.

2.

Supporting our conclusion is the Secretary of Labor and the EEOC's consistent position that intracompany complaints are included within the meaning of "filed any complaint." We afford agency interpretations that do not have the force of law, like agency manuals and litigation documents, respect to the extent that they possess the "power to persuade." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Factors we consider when determining whether an agency interpretation has the power to persuade include "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Skidmore*, 323 U.S. at 140; *see also Cunningham v. Scibana*, 259 F.3d 303, 306-07 (4th Cir. 2001).

Here, the EEOC has set forth the position that intracompany complaints constitute "fil[ing] any complaint" within the meaning of § 215(a)(3) in the compliance manual it issues to field offices. 2 *EEOC Compliance Manual* § 8-II(B) & 8-II(B) n. 12 (2006). In addition, both the Secretary and the EEOC have argued in litigation that intracompany complaints are covered by the FLSA's antiretaliation provision. *See, e.g.*, Br. for the Sec. of Labor and the EEOC as Amici Curiae at 26-30; Br. for the Sec. of Labor as Amicus Curiae, *Kasten v. Saint-Gobain Performance Plastics Corp.*, 570 F.3d 834 (7th Cir. 2009) (No. 08-2820). Thus, although it is not determinative, because the Secretary and the EEOC have consistently advanced this reasonable and thoroughly considered position, it "add[s] force to our conclusion." *Kasten*, 131 S. Ct. at 1335.

## E.

We conclude by emphasizing that our holding that intracompany complaints may constitute "fil[ing] any complaint" under § 215(a)(3) does not mean that every instance of an employee "letting off steam" to his employer constitutes protected activity. *Kasten*, 131 S. Ct. at 1334. To the contrary, "the statute requires fair notice" to employers. *Id.* To protect employers from unnecessary uncertainty, "some degree of formality" is required for an employee complaint to constitute protected activity, "certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand that matter as part of its business concerns." *Id.* Therefore, the proper standard for the district court to apply is the aforementioned test articulated in *Kasten*: whether Minor's complaint to her employer was "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 1335.

Minor's allegations here meet the standard we have articulated to the extent required to survive a motion to dismiss.

The facts as alleged in her complaint indicate that Minor expressed her concerns regarding FLSA violations to the chief operating officer of her company in a meeting specifically called for that purpose. Minor also alleges that this executive-level employee agreed to investigate her claims. At this stage, these allegations are sufficient. We note again that we express no view as to whether Minor should ultimately prevail under the standard we have articulated. We simply hold that, on the facts alleged, her complaint survives a motion to dismiss.

## III.

For the foregoing reasons, the judgment of the district court is

*REVERSED AND REMANDED.*