DAVIS, Circuit Judge,
dissenting from the denial of rehearing en banc:
Injustice comes in many forms. It is insidious. It chokes persons and their communities alike. It besmirches legislators, prosecutors, and yes, judges, alike. It undermines public confidence in government and its institutions. It mocks our national commitment to the ideal of even-handedness and fairness. And, when it is the product of an unwarranted and inexplicable deviation from settled standards, it holds hands with iniquity.
I am persuaded that this case presents a profound exemplar of injustice, and I deeply regret the court’s refusal to rehear this case en banc. I am honored to join in the elegant dissenting opinion of my good colleague, Judge Motz. Judge Motz conclusively demonstrates that the panel majority in this case has deviated from Supreme Court precedent and thereby inflicted a grievous harm on Appellee Foster and, frankly, on the rule of law. I offer this additional critique of the panel majority’s handiwork as further illustration of how *399 injustice so infects the outcome of this proceeding.
I.
First, as Judge Wynn’s panel dissent forcefully argued, the panel majority has seriously misapplied the appropriate standard of review. The majority opinion states: “We consider de novo whether an offense qualifies as a violent felony under the ACCA. United States v. Thompson, 421 F.3d 278, 280-81 (4th Cir.2005).” United States v. Foster, 662 F.3d 291, 293 (4th Cir.2011). But this is, at best, an incomplete statement of the controlling legal principles. Indeed, Thompson itself states: “We review legal determinations of the district court de novo. United States v. Blake, 81 F.3d 498, 503 (4th Cir.1996).” 421 F.3d at 280-81 (emphasis added). Blake, in turn, states: “We begin by noting that in reviewing the application of the guidelines by a district court, we examine factual determinations for clear error; legal questions, however, are subject to a de novo standard of review. United States v. Singh, 54 F.3d 1182, 1190 (4th Cir.1995).” 81 F.3d at 503.
Singh, on which Blake relied, made clear the mixed standard of review:
Applying the statutory command to give “due deference” to a district court’s application of the sentencing guidelines, we review factual determinations for clear error and legal questions de novo. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir.1989).
54 F.3d at 1190. And in Daughtrey, the court provided a full exposition of the standard of review of sentencing determinations made after the Sentencing Reform Act of 1984, while summarizing the bottom-line notion as follows: “If the issue turns primarily on a factual determination, an appellate court should apply the ‘clearly erroneous’ standard.” 874 F.2d at 217.
This illustration of the lineage of our proper standard of review is unassailable. Indeed, Judge Agee makes that clear in his recently-published opinion in United States v. Moore, 666 F.3d 313, 320 (4th Cir.2012) (“In the context of sentencing, we review the district court’s legal determinations de novo, and its factual findings for clear error. United States v. Osborne, 514 F.3d 377, 387 (4th Cir.2008).”).[1]
Before the panel in this case, the government did not suggest anything to the contrary, although it cleverly sought to obfuscate the standard of review with this description of the applicable standard of review in its brief: “Whether an offense qualifies as a ‘violent felony" under the Armed Career Criminal Act is ultimately a matter of law that is reviewed de novo. United States v. Thompson, 421 F.3d 278, 280-281 (4th Cir.2005).” Appellant’s Br. at 6 (emphasis added). Of course, the “ultimate” question under any statute is a question of law. But the issue in this case is not the “ultimate” question of whether an offense under the Virginia non-generic burglary statute might nevertheless constitute “generic burglary” under the ACCA; we know the answer to that question. The *400 question in this case, however, which requires no legal analysis but rather & factual analysis, is whether the district court clearly erred in finding that the government failed to satisfy its burden of proof (as constrained by Shepard) to establish that two of Foster’s prior offenses were generic burglaries. See also Govt’s Corr. Response Pet. Reh. En Banc at 8 (conceding that “the government bears the burden of proving an ACCA predicate offense by a preponderance of the evidence”).
Of even more particular and compelling salience in the context of this case, Judge Wilkinson (joined by Judge Motz) recently demonstrated conclusively that determinations by a district court of what a Shepard-approved document establishes (as in this case) are quintessential factual questions subject to the clear error standard of review. See United States v. Taylor, 659 F.3d 339, 348 n. * (4th Cir.2011).
In Taylor, the majority rejected my argument in dissent that the Shepard-approved document, there a guilty plea transcript, was insufficient to establish that the underlying conviction was a crime of violence under the ACCA, and reasoned as follows:
Before us is simply the question of whether the district court properly concluded from the relevant Shepard documents that Thompson’s prior conviction was a qualifying predicate. In the course of making that finding, we believe the district court was entitled to rely on those facts and circumstances in the plea colloquy it felt relevant ....
The sole question therefore is whether the district court made a proper finding that Thompson’s second degree assault conviction was for a crime of violence. We think without question that the trial court made that finding and that the plea colloquy amply supports its conclusion.
Id. (emphases added).[2]
What the district court did in this case is exactly what the district court did in Taylor; it examined Shepard-approved documents in order to make a finding of fact, except that the district court’s finding in this case was against the government rather than in favor of the government. I presume all agree that this distinction alone is hardly a reason to reverse the district court in this case.[3]
*401 Notably, the parties have not had an opportunity to brief Taylor's effect on the issues in this case because the briefing and argument before the panel in this case were concluded well before Taylor was published on October 24, 2011. If en banc rehearing had been granted, we would have had the benefit of counsel’s arguments on the effect on this case, if any, of Taylor's application of the clear error standard. The failure of one more circuit judge in regular active service to vote in favor of rehearing erects an impenetrable bar to that extraordinary opportunity. Injustice sneaks up on us in so many ways.
Thus, and in any event, the question presented here is a question of fact, as the majority’s resort to “judicial notice” of geographic features of a county in the Commonwealth of Virginia makes clear. Cf. Ohio Bell Tel. Co. v. Pub. Util. Comm’n of Ohio, 301 U.S. 292, 301, 57 S.Ct. 724, 81 L.Ed. 1093 (1937) (“[N]otice, even when taken, has no other effect than to reheve one of the parties to a controversy of the burden of resorting to the usual forms of evidence.”). Accordingly, if the judges of this court believe the district court committed clear error they should say so, but they should not, sub silentio, alter (any more than they should misapply) our well-established standard of review of the multi-faceted process of district court sentencing.
This case is a first, so far as I can tell. Although we have found it necessary, of course, to elucidate the applicable legal standards of sentencing enhancement law, in my canvass of our post-Shepard ACCA, career offender, and guidelines-offense-enhancement cases, I cannot locate an instance in which this court, in a published opinion, outright reversed a district court’s finding of fact underlying its determination that the government failed to carry its burden of proof to show that an offender was eligible for the applicable sentencing enhancement. See United States v. Donnell, 661 F.3d 890 (4th Cir.2011) (reversing for legal error); United States v. Vann, 660 F.3d 771 (4th Cir.2011) (en banc) (same); United States v. Simmons, 649 F.3d 237 (4th Cir.2011) (en banc) (same); United States v. Peterson, 629 F.3d 432 (4th Cir.2011) (same); United States v. Clay, 627 F.3d 959 (4th Cir.2010) (same); United States v. Rivers, 595 F.3d 558 (4th Cir.2010) (same); United States v. Alston, 611 F.3d 219 (4th Cir.2010) (same); United States v. Bethea, 603 F.3d 254 (4th Cir.2010) (same); United States v. Thompson, 588 F.3d 197 (4th Cir.2009) (same, rejecting district court’s legal conclusion that circuit precedent had been abrogated by Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008)); United States v. Roseboro, 551 F.3d 226 (4th Cir.2009) (vacating imposition of enhanced sentence upon concluding that Begay did abrogate circuit precedent); United States v. Harcum, 587 F.3d 219 (4th Cir.2009) (reversing for legal error); United States v. Thornton, 554 F.3d 443 (4th Cir.2009)(same); see also United States v. McQueen, 445 F.3d 757 (4th Cir.2006) (reversing district court’s refusal to impose ACCA sentence “without any analysis” and holding that ostensible restoration of defendant’s civil rights was trumped by “his repeated felony offenses over time”); United States v. Green, 436 F.3d 449 (4th Cir.2006) (reversing district court’s refusal to impose career criminal sentence upon concluding that “district court erred as a matter of law” in applying guidelines); United States v. Washington, 404 F.3d 834 (4th Cir.2005) (reversing, under plain error standard, in the circuit’s first application of Shepard, district court’s offense level enhancement for § 922(g)(1) conviction in reliance on non-Shepard, sources).
In contrast, it is no coincidence that, with one exception, every one of the circuit *402 court cases cited by the majority in the panel opinion in this case (and now parroted by the government, see Govt’s Corr. Response Pet. Reh. En Banc at 10-11) in support of the majority’s reversal of the district court’s finding under the ACCA that the government failed to carry its burden of proof was an affirmance of the lower court’s imposition of an enhanced sentence. See United States v. Baxter, 642 F.3d 475 (4th Cir.2011); United States v. Proch, 637 F.3d 1262 (11th Cir.2011); United States v. Rainer, 616 F.3d 1212 (11th Cir.2010); United States v. Miller, 478 F.3d 48 (1st Cir.2007); United States v. Letterlough, 63 F.3d 332 (4th Cir.1995).[4]
In the one exception to the pattern described in the above paragraph (of the panel majority citing cases which affirmed the imposition of an enhanced sentence to support the reversal of a refusal to impose an enhanced sentence), United States v. Aguila-Montes de Oca, 655 F.3d 915 (9th Cir.2011) (en banc), the district court’s imposition of an enhanced sentence was reversed on appeal. Id. at 917, 946, 973-74 (Opinions of Bybee, J., and Berzon, J.) (concluding that the Shepard-approved documents before the district court did not support its finding that defendant had been convicted of generic burglary under California law). Turning ostensible persuasive authorities on their heads and extracting obiter dicta from them in order to reverse the district court in this case is peculiar, to say the least.
In short, like the burden of proof at the trial stage, the standard of review at the appellate stage is the coin of the realm. We ought not lightly permit corrosive influences, arising out of understandable dissatisfaction with substantive legal doctrines, to denude the value of that currency.
II.
Second, by rule we deem unpublished opinions “nonprecedential” for several very good reasons. 4th Cir. R. 32.1; see also United States v. Hayes, 482 F.3d 749, 751 n. 7 (4th Cir.2007) (citing 4th Cir. R. 32.1 for proposition that pre-2007 unpublished opinion is not controlling precedent), reversed and remanded on other grounds, 555 U.S. 415, 129 S.Ct. 1079, 1089, 172 L.Ed.2d 816 (2009). Applying the rule, Judge Duncan recently wrote, in Minor v. Bostwick Laboratories, Inc., 669 F.3d 428, 433 n. 6 (4th Cir.2012), “we decline to address the arguments Bostwick bases upon [a prior unpublished opinion].” The prominent role of the unpublished opinion relied on by the panel majority here, United States v. Shelton, 196 Fed.Appx. 220 (4th Cir.2006) (unpublished) (and now parroted by the government, see Govt’s Corr. Response Pet. Reh. En Banc at 11), is troubling on several levels.
The majority devotes an entire paragraph to that nonprecedential case and accords it unwarranted gravitas:
This conclusion is augmented by our prior decision in United States v. Shel *403 ton, 196 Fed.Appx. 220 (4th Cir.2006) (unpublished). In Shelton, we concluded that an indictment charging the defendant with breaking and entering “the business of All American Car Wash” established that the prior conviction was for a generic burglary: “[w]e believe the reference to ‘the business’ necessarily ensures that Shelton sought to enter ‘a building or structure.’ ” Id. at 222. If the broad term “business” in Shelton sufficiently defined a generic burglary, so too should the more explicitly named businesses in the case at bar.
662 F.3d at 295-96.
Manifestly, this is inconsistent with the letter and certainly the spirit of our local rule, particularly regarding a case, such as Shelton, that was not even orally argued. This is even more true in a case in which the district court specifically considers a non-precedential case and, in reliance on its nonprecedential character, declines to follow it. See United States v. Foster, 732 F.Supp.2d 649, 653 (W.D.Va.2010) (“[Citation of unpublished decisions issued prior to January 1, 2007, is disfavored, 4th Cir. R. 32. 1, and accordingly Shelton does not control the present case.”) (citation omitted).
We should not put district courts in such a Catch-22, which is to say we certainly should not treat non-precedential, unpublished opinions as if they were otherwise in a case in which we reverse the district court for treating a nonprecedential opinion as if it were non-precedential, as indeed it is. In any event, the fact that we affirmed the district court in Shelton says no more than that the court did not clearly err in finding the government had carried its burden of proof. From an institutional perspective, it is unseemly, to say the least, to promote a non-precedential prior opinion when a subsequent panel agrees with its reasoning or outcome, as in this case, only to summarily “decline to address” such an opinion when a subsequent panel disagrees with its reasoning or outcome, as in Minor. After all, as Emerson wrote, it is only “foolish consistency” that is “the hobgoblin of little minds.” Playing an insidious game of “Gotcha” with the district courts in this circuit is no way to run a judicial railroad.
III.
Third, I think that reversing a district judge for his lack of “common sense,” or because he “abandoned] logic,” if ever appropriate, is to be reserved for the most extreme cases. This is not one of those cases. I have little doubt that the panel’s majority and concurring opinions intend this meaning by their profligate invocation of these terms. See ante at 396 (Motz, J., dissenting). And I believe there is a high risk that many readers, both casual and knowledgeable, will view it this way. Again, if there was clear error, the court should say so in a forthright manner. It should not hide behind a misapplication of the de novo standard of review, accompanied by insincere salutes to “common sense” and “logic.”
To be sure, as Judge Wilkinson recently reminded us, “[a] judge’s toolkit includes common sense.” United States v. Montieth, 662 F.3d 660, 668-69 (4th Cir.2011). At the same time, however, “common sense” is no judicial panacea or magic wand. See Pagan v. Fruchey, 492 F.3d 766, 778 (6th Cir.2007) (en banc) (“A judicial pronouncement that an ordinance is consistent with common sense hardly establishes that it is so.”).
As Judge Motz demonstrates, common sense has not been appropriately invoked to justify a reversal in this case. In any event, contrary to any suggestion that the district court lacked common sense, the distinguished district judge brought to *404 bear the Ml breadth of his knowledge, experience, insight and wisdom in conducting the sentencing hearing in this case. As he noted both at sentencing and in his written opinion, the offenses leading to the disputed convictions were committed when the defendant was 19 years old and that the defendant had no further felony convictions in the 19 years between those convictions and the present conviction. Foster, 732 F.Supp.2d at 651 n. 1. The court did an exemplary job of explaining its sentencing decision in this case, in which the defendant had a hunting rifle in his car.
It may well be that the district court was outraged, and justifiably so, at the thought that Foster should serve a 15-year sentence for his offense (rather than the 27 months imposed), but no view of the district court’s handling of this case could reasonably support the conclusion that the court acted lawlessly in adjudicating this case. So that the whole world will see the genuine attention and evenhandedness the district court brought to its task in this case, I attach as an appendix to this opinion a reproduction of a part of the transcript of the sentencing hearing reflecting the court’s statements.
In sum, I am convinced this record militates strongly in favor of rehearing. “[I]f the primacy of trial courts in the sentencing process envisioned in Gall [v. United States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) ] is to be respected, the district court’s reasonable conclusions from a Shepard-approved document must be upheld.” Taylor, 659 F.3d at 348 (Wilkinson, J.). This is no less true when the defendant prevails on factual determinations under Shepard as when the government prevails. The panel majority’s mistaken assertion that the proper standard of review here is de novo goes unremedied and Foster, close to (or already) released from federal prison, will be ordered to report, again, to the United States Marshal to serve an additional twelve-plus years in prison imposed by a couple of federal judges he has never seen before and who have never looked him in the eye.[5] Nevertheless, we can be sure that, soon enough, when the government next prevails on a disputed question arising from a district court’s interpretation of the facts in a Shepard-approved document, government prosecutors will bound up the steps of our courthouse and earnestly implore us to apply a clear error standard of review. And the government will be right to ask us to do so. Only the fog of injustice beclouding this moment impedes our ability to see that this is so.
The result here is inconsistent with Supreme Court precedent; incompatible with circuit rules and long-settled understandings; and will be incomprehensible to the communities we serve. Because en banc review plainly is required here to maintain uniformity in our jurisprudence and to address issues of exceptional importance, I dissent from the refusal of the court to grant the petition for en banc rehearing.
Judge GREGORY joins in this dissent.
APPENDIX TO OPINION OF DAVIS, J., DISSENTING FROM THE DENIAL OF REHEARING EN BANC
UNITED STATES v. JOHN JOEL FOSTER CASE NO. 10-5028
UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
THE COURT: Well, if there’s nothing further, I am prepared to impose sentence *405 at this time. Mr. Foster, if you will stand, sir. Mr. Foster, is there anything that you wish to say to me before I pronounce sentence in your case?
THE DEFENDANT: No, sir.
THE COURT: Well, the following are the reasons for the imposition of the sentence in this case: I’ve carefully considered the factors set forth in 18, United States Code, Section 3553(a), as well as the sentencing range established in this case by the advisory sentencing guidelines.
The parties have made the following arguments as to the appropriate sentence, which I’ve also considered. The government argues that I should impose a sentence above the advisory guideline range as a variance, on the ground that the guideline range is far below the mandatory minimum sentence otherwise provided for in the Armed Career Criminal Act, and that, accordingly, since I ruled that the Armed Career Criminal Act was not applicable to Mr. Foster’s case, I should consider a higher sentence than the guideline range.
Of course, the Armed Career Criminal Act was not established by the sentencing commission and has no direct reference to the factors set forth in 18, United States Code, Section 3553(a). It is a statute that requires a mandatory minimum regardless of the history and characteristics of the defendant or the other factors set forth in the statute, and I do not believe that that is an adequate basis for considering those factors in the appropriate sentence in this case.
In fact, I believe it would be unjust to impose a sentence mandated by the Armed Career Criminal Act to the defendant, since I have found that it is not applicable to him and that there are no other circumstances, in my view, which would justify such a sentence.
Now, the government also argues that the defendant’s criminal history underrepresents the seriousness of his prior criminality. I’m not sure whether the government requests an upward departure within the meaning of the guidelines or simply an upward variance. But in either event, I do not believe such a course would be appropriate in this case, although, of course, I have the discretion to do so.
The prior convictions of the defendant which I considered in regard to the application of the Armed Career Criminal Act occurred when the defendant was 19 years old, many years ago. They involve a series of break-ins to businesses that occurred in the same geographical area over a relatively short period of time. There’s no indication that such crimes or types of crimes such as these have occurred since then in the defendant’s life.
His problem since then has been one of substance abuse, which I’ll get into in a moment. But there’s no indication that, since the age of 19, that he has engaged in break-ins or thefts or other property offenses such as described in the presentence report, so I do not believe that those offenses which occurred, again, years ago indicate that his criminal history, as calculated under the advisory sentencing guidelines, under-represents his criminality.
The government also argues that I should sentence the defendant above the advisory guideline range because in 2006 he was convicted of possession of marijuana, and the facts indicated that a search of his residence discovered ten marijuana *406 plants, which could have been prosecuted as a felony, but through plea bargaining he was convicted of a misdemeanor.
Well, in the first place, we don’t have any idea about why the state prosecutor agreed to a misdemeanor conviction and the court placed the defendant on probation. I would have to presume that there was good reason for that. And normally when a plea bargain to a misdemeanor occurs, it reflects perhaps a problem with proof of a more serious offense, or the defendant’s conduct, his personal history and characteristics indicate leniency is indicated.
But in either event, I do not believe that it would be appropriate for me to impose a sentence above the advisory guideline range because it is theoretically possible that the defendant may have been convicted of a felony in 2006.
Now, I believe that the guideline calculation, to which there has been no objection other than the government’s request that I impose a mandatory sentence under the Armed Career Criminal Act, adequately reflects the factors set forth in Section 3553(a), and for that reason, I intend to follow the argument of the defendant and impose a sentence within the advisory guideline range.
Now, in particular, the defendant has requested a sentence at the low end of the guideline range. One of the factors I must consider is, under the statute, a sentence that would provide the defendant with needed correctional treatment in the most effective manner, including medical care.
As I’ve indicated, the defendant’s problem has been his substance abuse problem. As the presentence report indicates, he has a long history of alcohol and drug-related problems, and I believe that the defendant needs treatment while incarcerated. I’m going to recommend to the Bureau of Prisons that the defendant be subjected to the residential substance abuse program available in the Bureau of Prisons.
Accordingly, I believe that a sentence at the high end of the guideline range would make it more likely that the defendant could receive appropriate treatment while incarcerated.
I would urge the defendant to take advantage of such a program, or any other programs that are available to him while he’s incarcerated, so that when he gets out, he will be able to make sure that his substance abuse problems don’t lead him into the same type of trouble that he is in in this case.
Accordingly, for the reasons stated, it is the judgment of the Court that the defendant, John Joel Foster, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 27 months. The Court will recommend to the Bureau of Prisons that the defendant be enrolled in the residential substance abuse treatment program.
The defendant has performed all the conditions of his bond, and I will accordingly recommend to — accordingly, I will permit him to self-report to the institution designated by the Bureau of Prisons upon notification.
Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years.
*407 WYNN, Circuit Judge, dissenting from the denial of rehearing en banc:
Unfortunately, this Court, equally divided, refuses to grant rehearing en banc in this case. I write now not to address why I believe the panel majority was incorrect; rather, I write to point out why this case is particularly well suited to be considered by the full Court, irrespective of whether one agrees or disagrees with the panel majority opinion.
To warrant an en banc rehearing, Appellate Procedure Rule 35 requires that en banc consideration be “necessary to secure or maintain uniformity of the court’s decisions” or that the issues at hand are “of exceptional importance.” Fed. R.App. P. 35. Stated differently, a rehearing en banc is not contingent on disagreement with the panel majority. Instead, the rule mandates simply that due consideration by the full Court is warranted when an issue is sufficiently important, or there is enough tension between the opinion and other Circuit precedent.
This case easily clears both hurdles. First, this case is of exceptional importance, because, among other things, it raises important Sixth and Fourteenth Amendment issues. As has already been well covered, in circumstances remarkably similar to those in this case, the Supreme Court, in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), expressly prohibited courts from making findings of fact not directly apparent from a charging document, the terms of a plea agreement, or some comparable judicial record. Id. at 26, 125 S.Ct. 1254. As Justice Souter noted in his opinion, anything else has serious constitutional implications:
[T]he Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury’s finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to Jones [v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)] and Apprendi, to say that Almendarez-Torres [v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) ] clearly authorizes a judge to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality, therefore counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as Taylor constrained judicial findings about the generic implication of a jury’s verdict.
Id. at 25-26, 125 S.Ct. 1254 (opinion of Souter, J.) (citation omitted). The fundamental constitutional rights implicated here are exceptionally important.
Second, numerous judges on this Court join in Judge Motz’s dissent to the denial of rehearing en banc, which expresses the view that the panel majority squarely conflicts with controlling Supreme Court precedent. Likewise, the panel majority is in serious tension with our own Court’s case law, including United States v. Washington, 629 F.3d 403, 409-10 (4th Cir.) (noting “the animating purpose! ] of the Taylor/Shepard line: the desire to avoid extensive litigation about prior convictions at sentencing” and recognizing the “canonical set of records” upon which courts may rely under Shepard), cert. denied, — U.S. -, 132 S.Ct. 127, 181 L.Ed.2d 49 (2011), and United States v. Bethea, 603 F.3d 254, 259-60 (4th Cir.2010) (rejecting the “most plausible explanation” and common use of the term “escape” and focusing solely on whether S/mpard-approved documents *408 necessarily showed that the defendant had committed the type of violent conduct required under the Armed Career Criminal Act (“ACCA”)).
The sheer fact that this Court’s vote on this en banc rehearing petition is 7-7 itself indicates that this case is important and warrants this Court’s full attention. Fully half of this Court’s judges deem this matter worthy of being one of only a handful of cases, at most, that the Court hears en banc in a given year. That the 7-7 split of the rehearing vote could indicate that a fractured decision may ultimately arise from rehearing (which is in no way assured, since voting whether rehearing en banc is warranted should not be a vote on the merits, as my previous Rule 35 discussion notes) is no reason to shy away from rehearing this case. Indeed, were the Supreme Court to take such a view and dodge contentious issues, many of the most pressing cases would never get Supreme Court review. And it seems to me that it is precisely those difficult cases that benefit most from every considered view, i.e., from rehearing by the full Court.
Moreover, I cannot help but wonder what the precedential value of the panel majority opinion is. First, there is the consideration that Judge Wilkinson writes a concurring separate opinion that does not address directly why en banc review should be denied but instead sets forth his considered thoughts on why “the panel majority here committed no Shepard error.” Opinion of Wilkinson, J. at 393. In short, though Judge Wilkinson votes to deny this Court the opportunity to review this matter, he nonetheless writes an opinion that concurs in the majority panel opinion. To use his own words in this context, he is “quick to heap opprobrium” on voting to allow the merits to be addressed by the full Court, yet engages in precisely that, which he has denied the full Court, by issuing an opinion that concurs in the panel majority opinion.[1]
Too, Judge Motz and Judge Davis have issued opinions which, like that of Judge Wilkinson, do not directly address why en banc review should be allowed. But unlike Judge Wilkinson, they vote to allow all of the other members of this Court the opportunity to address the merits of the underlying appeal, as they do in their respective opinions.
Additionally, Judge King, Judge Gregory, Judge Davis, Judge Keenan and Judge Floyd all concur in Judge Motz’s dissenting opinion. Judge Gregory also concurs in Judge Davis’s dissenting opinion. With Senior Judge Hamilton[2] (who also wrote a separate opinion concurring in the panel majority opinion) joining in Judge Agee’s panel majority opinion, and my dissent *409 from the majority panel opinion, ten judges have now expressed their opinions on the merits of the underlying appeal, not just on the decision to deny rehearing.
That leaves the order denying a rehearing en banc essentially affecting only the remaining five judges who have neither written nor joined an opinion that concurs or dissents from the panel majority opinion. I suppose if those five judges were to align themselves with any of the opinions arising from this poll, this Court would effectively have conducted an en banc review — only without having given the parties access to the full Court via oral argument to express their views.
Further, what guidance does the panel majority opinion provide, for this Court and for district courts, going forward? Is using “common sense” required, or merely discretionary? Even were employing “common sense” mandatory, different judges will almost surely have different notions of “common sense and experience,” “resulting in a totally subjective standard .... ” Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1346 (11th Cir.2010) (Ryskamp, J., dissenting). The outcome of a “common sense” inquiry in any given case will therefore likely depend, at least in part, on the identity of the district court judge or the appellate panel members — a troubling consequence indeed.[3]
I appreciate that rehearing en banc “is not favored” and is the exception rather than the rule. Fed. R.App. P. 35. Nevertheless, rehearing en banc is an important tool for giving difficult issues the benefit of every considered view. In considering rehearing requests, the inquiry should not be, “would I have voted differently than the panel majority,” but rather, ■ “is the issue this case presents particularly important or in tension with precedent.” See id. With all due respect to my good colleagues voting to deny the full Court an opportunity to confront the issues in this case, the correct answer here, particularly when viewed irrespective of inclinations on the merits, is a resounding yes.
I must therefore respectfully dissent from the denial of a rehearing en banc. Judge Gregory and Judge Davis have authorized me to indicate that they join in this dissent from the denial of rehearing en banc.

. See also United States v. Washington, 629 F.3d 403, 411 (4th Cir.) (Wilkinson, J.) ("We review legal issues such as whether a defendant’s previous conviction counted as an ACCA predicate de novo, and we review factual findings for clear error.”) (citations omitted), cert. denied, — U.S. -, 132 S.Ct. 127, 181 L.Ed.2d 49 (2011); United States v. Abu Ali, 528 F.3d 210, 261 (4th Cir.2008) (Traxler, J.) ("As always, when considering a sentence’s reasonableness, we 'review the district court's legal conclusions de novo and its factual findings for clear error.’ ”); United States v. Thornton, 554 F.3d 443, 445 (4th Cir.2009) (Duncan, J.) ("When considering a sentence's reasonableness, we 'review the district court's legal conclusions de novo and its factual findings for clear error.’ ”).

. In my dissent, I argued that the district court committed an error of law in its reliance on the Shepard-approved document to make its finding that the appellant's second-degree assault conviction in violation of Maryland law was a "crime of violence” under the ACCA. See 659 F.3d at 349, 352 & n. 6. The majority concluded, to the contrary (as recounted above), that the district court committed no error of law and that the Shepard-approved document was sufficient to support the district court's finding that the prior conviction was a qualifying offense under the ACCA.

. As the Supreme Court stated in Anderson v. Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985):
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.

This is so even where the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.

Id. at 574, 105 S.Ct. 1504 (emphasis added) (citations omitted); see also Sheet Metal Workers Int’l Ass’n v. Sweeney, 29 F.3d 120, 126 (4th Cir.1994) (quoting this language from Anderson and stating, "This [is] the law”); United States v. Houman, 234 F.3d 825, 827 (2d Cir.2000) (per curiam) (citing Anderson and stating, "We review the district court’s factual finding as to the nature of the 1975 conviction under a clear error standard, notwithstanding the fact that the findings were based entirely upon documentary evidence.”).

. My opinion in Baxter, 642 F.3d at 476, provides no support for the panel’s reasoning or outcome, in any event. The word "shop” appearing in the Virginia burglary statute also appeared in the indictment in the prior prosecution in Baxter. Thus, the issue presented was a pure legal issue: whether, under federal law, as it absorbs the Virginia Supreme Court’s binding interpretation of the elements of state law (see Vann, 660 F.3d at 777), a "shop” is a "building.” The Virginia Supreme Court had so held in Graybeal v. Commonwealth, 228 Va. 736, 324 S.E.2d 698, 700 (1985), and we affirmed the district court’s adherence to that ruling in Baxter, 642 F.3d at 477.
No factual question whatsoever was presented in Baxter, and therein lies the problem in any attempt to apply it here.

. Good faith disagreements over the application of legal doctrine to one side, it is unimaginable how the result here might be genuinely '‘pleas[ing].” See ante at 395 (Wilkinson, J.).

. The concurring opinion states that the dissenters "are quick to heap opprobrium on the exercise of the obvious, but slow to suggest what the Corner Market and Sunrise-Sunset Restaurant might be other than buildings or structures.” Opinion of Wilkinson, J. at 393. To the contrary, footnote 2 of my dissent from the panel majority opinion does indeed suggest "what the Corner Market and Sunrise-Sunset Restaurant might be other than buildings or structures.” Id. Of course, those suggestions were not necessary to the analysis because the appropriate inquiry is whether the market and restaurant at issue must necessarily be buildings.

. Per the Fourth Circuit Judges’ Handbook, "[o]nly active judges may vote in a poll.” However, because Senior Judge Hamilton "was on the original panel that decided the case[,]” the Handbook provides that he may "continue[] to participate after rehearing en banc is granted.” Id. at 22 (emphasis added). Thus, a senior judge may not participate in any manner during the polling of this matter; instead, a senior judge may participate only if "rehearing en banc is granted.” Id.

. That is why the advice posited by the concurring opinion that "a policy disagreement with the ACCA” is a matter "to be taken up with Congress," Opinion of Wilkinson, J. at 395, is advice that should be directed to the majority panel opinion, in which the concurring opinion joins. Instead of reading the language of the ACCA and pertinent statutes and case law as they are written, the majority panel imports its own notions of "common sense” into the equation. Indeed, "common sense” as used by the majority panel here is little more than a thinly veiled public policy decision. The majority panel would therefore seem to be well served by the concurring opinion's misdirected advice: "Theirs is a policy disagreement” that should "be taken up with Congress.” Id.