COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Raphael and Senior Judge Annunziata
Argued at Fairfax, Virginia


NIKSOFT SYSTEMS CORP.

v.      Record No. 1925-23-4

JENNIFER LEISE                                    MEMORANDUM OPINION[*] BY
                                                  JUDGE ROSEMARIE ANNUNZIATA
JENNIFER LEISE                                    OCTOBER 7, 2025

v.      Record No. 1933-23-4

NIKSOFT SYSTEMS CORP.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge

John P. O'Herron (Catherine Chapman; Kristen L. Loesch;
Matthew R. Keller; Walker J. Gray; ThompsonMcMullan, PC;
Praemia Law, PLLC, on briefs), for NikSoft Systems Corp.

Adam S. Nadelhaft (Elaine Charlson Bredehoft; Charlson Bredehoft
Cohen Brown & Nadelhaft, P.C., on briefs), for Jennifer Leise.


NikSoft Systems Corp. ("NikSoft") sued its former employee, Jennifer Leise, after she

began working for a competitor.  Leise counterclaimed that NikSoft had violated the federal

Equal Pay Act ("EPA") by paying her less than her male colleagues and then retaliated against

her by suing her after she left the company.[1]  The jury found that NikSoft had waived its

non-compete, breach of fiduciary duty, conspiracy, and tortious interference claims against

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Leise also claimed that NikSoft's actions violated Minnesota law.  The parties agreed
through their jury instructions that Leise's equal pay and retaliation claims under Minnesota law
were identical to her claims under federal law.  Accordingly, we do not separately address
Leise's claims under Minnesota law.

Leise. The jury found in favor of NikSoft regarding Leise's EPA claim. But the jury returned a verdict in Leise's favor on her retaliation claim, awarding her $60,000 in compensatory damages, but nothing for lost compensation, attorney fees, or costs. The trial court entered final judgment consistent with the jury's verdict.

NikSoft and Leise cross appeal. NikSoft contends that the trial court erred by admitting a Binding Arbitration and Jury Trial Waiver Agreement (the "Arbitration Agreement") as relevant to Leise's waiver defense and by not setting aside the jury's verdict on Leise's retaliation claim.[2] For her part, Leise asserts that the trial court erred by: instructing the jury on NikSoft's affirmative defenses to her EPA claim; precluding her from testifying about her contingency fee agreement with her attorneys; and failing to set aside the jury's finding that she did not incur any attorney fees or costs for her retaliation claim. We affirm in part and reverse in part the trial court's judgment and remand the case for further proceedings.

BACKGROUND[3]

I. The Relationship Between the Parties

NikSoft, Perspecta Enterprise Solutions LLC ("Perspecta"), and three other companies provide cybersecurity staff to the United States Postal Service ("USPS"). The companies generate revenue under their respective contracts with USPS by billing USPS for services rendered by their employees. The hourly billing rate is determined by each employee's "labor category." The billing rate for each labor category varies based on each company's contract with USPS.

---

[2] As discussed below, NikSoft also contends that the trial court erred by denying its pretrial motion for summary judgment on Leise's retaliation claim.

[3] The record in this case was partially sealed. To the extent this opinion discusses facts contained in the sealed part of the record, we unseal only the specific facts stated in this opinion; the remainder of the sealed record remains sealed. *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023); *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

When USPS needs to fill an open cybersecurity staff position, it invites NikSoft and the other staffing companies to bid for the opportunity to fill the position with one of its employees. Each bid identifies a proposed candidate for the position and the labor category that the sponsoring company has selected for the candidate. After reviewing the bids, USPS selects an appropriate candidate for the position.

NikSoft's process for bidding on an open USPS staff position begins by identifying a candidate who is qualified for the position. Once it identifies a potentially qualified candidate, NikSoft contacts the candidate to determine his or her salary requirement. NikSoft then estimates the hourly rate it must bill USPS for the candidate's labor to justify hiring the candidate with a "flexibl[e]" set-percentage profit margin.[4] NikSoft estimates the hourly rate based on a formula that accounts for its business costs and profit goals (the "wrap rate").

Once NikSoft determines the amount it must bill USPS to justify hiring a candidate for the candidate's requested salary, it assigns the candidate a labor category matching the candidate's qualifications and a profitable billing rate. If the candidate's labor category is appropriate for the open USPS staff position, then NikSoft hires the candidate contingent on successfully bidding for the position.

NikSoft considered hiring Leise to fill an open USPS public key infrastructure lead ("PKI Lead") position in January 2018.[5] Leise demanded a certain fixed salary from NikSoft. NikSoft offered Leise her requested salary because the cost of her employment "f[e]ll[] within . . . the PKI lead bill rate." Leise began working for NikSoft on February 12, 2018. The hourly billing rate for

---

[4] NikSoft did not have a minimum profit requirement for hiring an employee. According to NikSoft's former chief operating officer, NikSoft "sometimes . . . had people that were at 5 percent profit, and sometimes [had] people that were at 15 percent profit."

[5] Leise previously filled the same PKI Lead position as an employee of a different staffing company.

Leise's labor category increased during her tenure at NikSoft based on an escalation clause in NikSoft's contract with USPS.

NikSoft also employed T.C. and E.G., both of whom are male, to perform cybersecurity services for USPS. Leise, T.C., and E.G. were the only "leads in engineering" NikSoft employed during 2019. Their work required substantially equal skill, effort, and responsibility under similar working conditions.[6] Leise, T.C., and E.G. had different labor categories and salaries during 2019. Leise had the lowest billing rate and salary.

Leise spoke to T.C. and E.G. regarding their salaries, and they informed her of the salary that other leads were making. In an email sent on July 8, 2019, Leise requested a raise from NikSoft. Her email stated as follows:

> I wanted to formally put in a request. I recently was advised that all other leads in Engineering are making approximately [$20,000 a year more than she earned]. . . . I wanted to address this formally over e-mail. I am one of the highest performing and most well respected leads in Engineering, have been with postal for 3 years and have advanced degrees and certifications. I'm asking to be brought in line with the other leads in the spirit of fair treatment in comparison to my peers.

Niksoft responded to Leise's email by directing her to update her resume so that it could ask USPS to change her labor category. NikSoft provided Leise's updated resume to USPS and asked it to increase her labor category to Cyber Architecture Level IV. USPS replied that it could not promote contractors, at which point NikSoft asked USPS to open a new "higher level position" for all staffing vendors to bid on. USPS informed NikSoft that it would post a new staff position. Leise's PKI Lead position would be eliminated once USPS filled the new position.

---

[6] NikSoft does not challenge the jury's finding that NikSoft paid Leise a lower salary than "a member, or members, of the opposite sex" notwithstanding that their jobs required substantially equal skill, effort, and responsibility.

Leise knew that NikSoft intended to submit her as its candidate for the new USPS position but was concerned that it would submit her at a lower billing rate and that she would become "stuck at NikSoft." So, Leise approached M.L., a program manager at Perspecta, about becoming a Perspecta employee. Leise disclosed to M.L. that "[t]here was going to be a position opening up" and that NikSoft had asked USPS to change her labor category to Cyber Architecture Level IV.

Perspecta offered Leise a job, intending to submit her as its candidate for the new USPS position. USPS posted the new position on August 28, 2019. The next day, NikSoft submitted Leise as its candidate for the position. Leise resigned from NikSoft twenty minutes later.[7] As a result, NikSoft retracted its bid.

Perspecta submitted Leise as its candidate for the new USPS position on September 3, 2019. USPS accepted Perspecta's bid, and Leise filled the position as a Perspecta employee.

Before she left, NikSoft "remind[ed]" Leise of her "continuing obligation" under a Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement (the "Non-Compete Agreement"). When NikSoft discovered that Perspecta had hired Leise, it sent her a cease-and-desist letter based on its "belief that [she was] violating the [Non-Compete Agreement]." Leise denied NikSoft's accusation and assured it that she would not take actions that might violate the Non-Compete Agreement. Perspecta likewise advised NikSoft that it had "no interest in [Leise] violating" any "legitimate obligations" under the Non-Compete Agreement.

II. Material Proceedings

On October 10, 2019, NikSoft sued Leise in a Minnesota state court alleging that she had violated the Non-Compete Agreement by "working for a direct competitor" and "immediately poaching a NikSoft customer." Leise successfully moved to dismiss the Minnesota lawsuit based

---

[7] Leise's resignation "express[ed] [her] gratitude for [her] time at NikSoft" and stated that her last day of employment at NikSoft would be September 20, 2019.

on the choice of forum provision in the Non-Compete Agreement. NikSoft subsequently sued Leise in the trial court for violating the Non-Compete Agreement, breaching her fiduciary duty of loyalty, and business conspiracy.[8]

Leise asserted the affirmative defense of waiver to NikSoft's claims. She also counterclaimed, alleging that NikSoft had violated the EPA by paying her "significantly less than her male counterparts" and retaliating against her when she requested equal pay. Leise requested an award of attorney fees and costs for each of her counterclaims.

NikSoft moved *in limine* to exclude the Arbitration Agreement as irrelevant. According to NikSoft, the Arbitration Agreement "ha[d] no bearing on any of the claims at issue" and Leise had waived her rights under the agreement by litigating the case "for over three years." Leise replied that NikSoft had waived its right to sue her by failing to timely provide written notice of its claims to C2 Essentials, Inc. ("C2 Essentials"), a company which provided human resource services to NikSoft, as required by the Arbitration Agreement. The trial court denied NikSoft's motion but directed the parties to redact the word "arbitration" from the Arbitration Agreement.

NikSoft moved for summary judgment on Leise's retaliation claim approximately two weeks before trial. It argued that "[n]o reasonable jury would find that [Leise] . . . suffered a materially adverse action by NikSoft," which was necessary to prove that it had retaliated against her. NikSoft specifically argued that the jury would not believe that it sued Leise because she requested a raise. Rather, NikSoft asserted that it had "a reasonable basis in [fact] and law" to sue Leise "and, therefore, there [was] no adverse action." The trial court ultimately denied NikSoft's motion for summary judgment on the first day of trial noting that the parties were

---

[8] NikSoft also sued Leise and Perspecta for tortious interference with business expectancy. NikSoft further sued Perspecta for tortious interference with contract and business expectancy, as well as business conspiracy. Those claims are not at issue in this appeal.

"arguing over the[] facts" and that it did not "wish to substitute [its] judgment for that of the jury."[9]

At trial, NikSoft's vice president of operations, Atif Khalil, testified that NikSoft could have paid Leise a small increase in salary based on her final billing rate without accounting for NikSoft's profit goals. But he explained that NikSoft had to increase an employee's labor category to be able to give the employee a significant raise. NikSoft's former chief operating officer testified that NikSoft's only consideration when setting an employee's salary was "[f]inancial."

Leise testified that it was "nerve-wracking" for her to request a raise from NikSoft because "[y]ou don't necessarily want the employer on notice about discrepancies in pay because of your gender." She explained that her July 8, 2019 email alluded to the fact that she wanted to be "brought to the same level in terms of salary to [T.C.] and [E.G.]" and that she "specifically omitted" the word "male" from her email because she thought it would anger Manesh Gupta, Niksoft's chief executive officer. According to Leise, it was "obvious that all of the engineering leads [were] male" and that she requested a raise because she "felt [she] needed to be treated fairly." Leise did not think that NikSoft took her email seriously or "look[ed] at it [as] a request to be brought in line with [her] male peers" because NikSoft managers did not "underst[and] or th[ink] about . . . what it meant." But Gupta stated that he knew that Leise had "brought a request to NikSoft to be paid the equivalent of people [she] consider[ed] to be [her] counterparts who are of the opposite gender."

---

[9] The trial court initially granted NikSoft's motion for summary judgment because Leise "went with a competitor in violation of her noncompete" and the fact that NikSoft did not sue "other people [who] left and had a noncompete" did not "mean that the company retaliated against [her]." Leise moved the trial court to reconsider its judgment claiming that NikSoft had misrepresented that "there was no adverse retaliatory conduct between [Leise's request for a raise] and the filing of the suit." Leise emphasized that NikSoft's retaliation "was immediate" as demonstrated by its failure to raise her salary, its decision to recompete her position, and the fact that it had not enforced the Non-Compete Agreement against other former employees.

NikSoft's former general counsel testified that NikSoft had never sent a cease-and-desist letter to, or sued, any former employee other than Leise. The former general counsel also acknowledged that NikSoft had chosen not to enforce its Non-Compete Agreement against a former male employee despite its belief that the former employee may have violated it.

Michael Barnsback offered expert testimony about Leise's request for attorney fees. Based on his review of the pleadings and invoices from Leise's attorneys, Barnsback opined that Leise had reasonably incurred $570,917.50 in attorney fees to prosecute her counterclaims and estimated that she would reasonably incur an additional $200,000 to $225,000 to pursue her claims through trial. NikSoft's expert, Hans Reide, opined that Leise's "total reasonable recoverable fees including expert fees and costs through trial would be between $604,000 and $625,000" if she prevailed on one of her counterclaims.

Following the experts' testimony, Leise testified that Perspecta had agreed to indemnify her for the attorney fees she incurred defending against NikSoft's claims. She clarified, however, that her agreement with Perspecta "d[id] not cover any counterclaims or other claims initiated against NikSoft." NikSoft likewise introduced a copy of Leise's agreement with Perspecta, which provided that Perspecta "shall not cover any counterclaims or other claims initiated against NikSoft by Leise."

Leise attempted to testify regarding her "arrangement" with her attorneys concerning the fees she incurred to pursue her counterclaims. NikSoft objected to Leise's testimony as irrelevant. Leise proffered that her testimony would show that she had not paid any attorney fees to pursue her counterclaims because the fees were "contingent . . . upon her recovery." She argued that her testimony was relevant because it would explain to the jury how she could afford to pursue her counterclaims. She emphasized that the jury "ha[d] to know that she's not shelling out that money."

The trial court permitted Leise to testify whether she had paid money to pursue her counterclaims but precluded her from "getting into contingency agreements." Leise subsequently testified that she was not "responsible" for the attorney fees and costs associated with her counterclaims and had not paid for them "yet."

III. Verdict and Post-Trial Motions

The jury returned a special verdict finding that NikSoft waived its claims against Leise. The jury also found that NikSoft proved an affirmative defense to Leise's EPA claim because the difference in her pay was "the result of a seniority system, or merit system, or system measuring earnings by quantity or quality of production, or a differential based on a factor other than sex related to the position and business necessity." The jury nevertheless returned a verdict for Leise on her retaliation claim because she had requested that her compensation "be brought in line with her male comparators" and NikSoft took "an adverse action against [her]." The jury determined that Leise had suffered $60,000 in compensatory damages and zero attorney fees and costs because of NikSoft's retaliation.

Leise moved to set aside the jury's verdict concerning her EPA claim and "to increase the jury's verdict of [her] attorney[] fees and costs to conform to the evidence" or order a new trial on that issue. NikSoft moved to set aside the jury's verdict concerning its claims and Leise's retaliation claim. The trial court denied the parties' post-trial motions and entered a final judgment order consistent with the jury's verdict. These appeals followed.

ANALYSIS

I. The Admission of the Arbitration Agreement

We find no error in the trial court's denial of NikSoft's motion *in limine* to exclude the Arbitration Agreement. This Court reviews a trial court's evidentiary ruling for an abuse of discretion. *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022). A trial court abuses its

discretion if it: (1) fails "to consider a relevant factor that should have been given significant weight," (2) "consider[s] and giv[es] significant weight to an irrelevant or improper factor," or (3) "commits a clear error of judgment." *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

"The interpretation of a contract is a question of law that this court reviews de novo." *Bolton v. McKinney*, 299 Va. 550, 554 (2021). "The fundamental question before [the Court] in construing a contract is 'what did the parties agree to as evidenced by their contract,' and the 'guiding light' for such construction is 'the intention of the parties as expressed by them in the words they have used.'" *RECP IV WG Land Invs. LLC v. Capital One Bank USA, N.A.*, 295 Va. 268, 283 (2018) (quoting *Schuiling v. Harris*, 286 Va. 187, 192 (2013)). Stated otherwise, "[w]e construe [a contract] as written, without adding terms that were not included by the parties. When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning." *Id.* (alterations in original) (quoting *City of Chesapeake v. Dominion SecurityPlus Self Storage, L.L.C.*, 291 Va. 327, 335 (2016)).

The Arbitration Agreement identified NikSoft as a "Co-Employer/Client" and provided, in pertinent part, as follows:

> The parties understand that the term "C2" as used in this Agreement is defined to include the C2 family of companies, any other entity that is a signatory to this Agreement including without limitation any Client or Co-Employer who may be a signatory to this Agreement . . . .
>
> **Claims Covered by this Agreement:** All parties to this Agreement agree to the resolution by bindin [sic] [redacted] of all claims, disputes or controversies, whether or not arising out of Employee's employment, or its termination, that all or any of the

- 10 -

entities identified collectively as "C2" may have against Employee or that Employee may have against all or any such C2 entities . . . include[ing] . . . claims for breach of any contract . . . .

    . . . .

**Required Notice of All Claims and Statute of Limitations:** All parties to this Agreement agree that the party bringing a Claim must give written notice of any such Claim to the other parties within six (6) months after the party bringing the Claim first had knowledge of the event(s) giving rise to the Claim. Otherwise, the Claim shall be void and deemed waived even if there is a federal or state statute of limitations that would have given more time to pursue such Claim.

Written notice to . . . C2 Essentials, Inc. . . . shall be sent to the Chief Executive Officer['s address] or to such other address as directed by the CEO. . . . The notice shall be sent to the other parties by certified or registered mail, return receipt requested.

NikSoft argues the trial court abused its discretion by admitting the Arbitration Agreement as relevant to Leise's waiver defense. According to NikSoft, the Arbitration Agreement did not govern its claims against Leise and the agreement's waiver provision is triggered only when a party fails to provide notice that it is "bringing an arbitration claim." We disagree.

To begin, the Arbitration Agreement does not distinguish between claims based on whether a party intends to submit those claims to arbitration. Rather, the Arbitration Agreement applies to all "claims, disputes or controversies" except certain claims not at issue here. Thus, the Arbitration Agreement by its plain language applies to the claims raised by NikSoft against Leise, including its non-compete claim. *Id.*

NikSoft resists the plain language of the Arbitration Agreement by arguing that it is inconsistent with the choice of forum provision in the Non-Compete Agreement. That provision states that "[a]ny action relating to" the Non-Compete Agreement "may be brought only in a . . . court." NikSoft reasons that it could not have agreed to arbitrate its non-compete claim because

- 11 -

it can only pursue that claim in court. NikSoft asserts that the purported inconsistency demonstrates that the Arbitration Agreement does not apply to any of its claims.

The Non-Compete Agreement does not address arbitration or preclude the parties from arbitrating NikSoft's claims against Leise. Nor does it contradict the Arbitration Agreement's notice and waiver provisions. Rather, the Non-Compete Agreement's choice of forum provision simply governs *where* the parties "may" bring an "action." Although NikSoft may have intended for its claims to be exempt from the Arbitration Agreement, we must construe each agreement "as written and will not add terms the parties themselves did not include." *Landmark HHH, LLC v. Gi Hwa Park*, 277 Va. 50, 57 (2009).

Even if we were to find that the Non-Compete Agreement is inconsistent with the Arbitration Agreement, the relevancy of the Arbitration Agreement would remain intact as the inconsistency would affect only claims arising under the Non-Compete Agreement. Thus, some of NikSoft's claims against Leise, specifically its claims for breach of fiduciary duty, conspiracy, and tortious interference, were subject to the provisions of the Arbitration Agreement. Yet, NikSoft argues that Leise "disavowed any right to arbitrate . . . [those] claims" by pursuing her counterclaims and moving to dismiss NikSoft's Minnesota lawsuit based on the Non-Compete Agreement's choice of forum provision. In other words, NikSoft contends that Leise cannot rely on the Arbitration Agreement's waiver provision because she did not seek to arbitrate the claims against her. But the Arbitration Agreement's waiver provision is not contingent on Leise pursuing arbitration of NikSoft's claims.

Finally, NikSoft asserts that only C2 Essentials could challenge its failure to provide notice under the Arbitration Agreement because Leise had written notice of its claims. Yet the Arbitration Agreement does not state that only unnotified parties can rely on its waiver provision. Rather, it broadly states that a party's claim "shall be void and deemed waived" if

that party fails to provide the required notice "to the other parties." Accordingly, we reject NikSoft's argument that Leise could not raise her waiver defense as contrary to the plain language of the Arbitration Agreement. *RECP IV WG Land Invs. LLC*, 295 Va. at 283.

In sum, the plain language of the Arbitration Agreement demonstrates that it applied to NikSoft's claims. Because the Arbitration Agreement was relevant to Leise's waiver defense, the trial court did not abuse its discretion by denying NikSoft's motion *in limine*.

II. The Jury's Retaliation Verdict

NikSoft contends that the trial court erred by denying its motion to set aside the jury's verdict on Leise's retaliation claim because she failed to establish any of the required elements of that claim.[10] The record does not support NikSoft's conclusions.

"It is well-settled that 'a party who comes before us with a jury verdict approved by the circuit court "occupies the most favored position known to the law."'" *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992)). "As a general rule, [w]e will not set aside a [circuit] court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Id.* (alterations in original) (quoting *Parson v. Miller*, 296 Va. 509, 523-24 (2018)). Where a circuit court declined to set aside a jury verdict, this Court considers whether the evidence, viewed in the light most favorable to counterclaimant, was sufficient to support the jury verdict. *Id.*

The EPA is part of the Fair Labor Standards Act ("FLSA"). *Reardon v. Herrin*, 201 F. Supp. 3d 782, 784 (E.D. Va. 2016); *see also* 29 U.S.C. § 215(a)(3). The FLSA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any

---

[10] NikSoft separately contends that the trial court erred by denying its motion to strike Leise's retaliation claim. We affirm that ruling for the same reasons we affirm the trial court's decision not to set aside the jury's verdict.

proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). To assert a prima facie claim for retaliation under the FLSA, an employee "must show that (1) [s]he engaged in an activity protected by the FLSA; (2) [s]he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008).

A. The Evidence Supports a Finding that Leise Engaged in a Protected Activity

NikSoft first challenges the sufficiency of the jury's finding that Leise engaged in a protected activity. An employee's decision to file an intracompany complaint may constitute a protected activity under the FLSA. *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 438 (4th Cir. 2012). "To protect employers from unnecessary uncertainty, 'some degree of formality' is required for an employee complaint to constitute protected activity." *Id.* at 439 (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). The complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."[11] *Minor*, 669 F.3d at 432 (quoting *Kasten*, 563 U.S. at 14).

NikSoft concedes that Leise was not required to use "magic words" to assert her rights under the EPA and that such an assertion may be implied by context. It maintains, however, that neither the content nor the context of her July 8, 2019 email notified it that she had asserted her rights under the EPA. NikSoft emphasizes that Leise purposefully omitted the word "male" from her email and her testimony that "[y]ou don't necessarily want the employer on notice about discrepancies in pay because of your gender."

---

[11] This standard is consistent with the jury instructions in this case.

- 14 -

NikSoft's argument ignores the full context of Leise's testimony. She did not concede that her email was not an assertion of her rights under the EPA. Rather, when viewed in the light most favorable to her, Leise's testimony reflects that she omitted the word "male" from her email because she did not want to anger NikSoft's CEO. According to Leise, the reason NikSoft may not have taken her email seriously as an assertion of her rights under the EPA was because it did not "th[ink] about . . . what [the email] meant." However, she maintained that it was "obvious that all the engineering leads [were] male," and the record further reflects that T.C., E.G., and Leise were NikSoft's only "leads in engineering" during 2019.

Leise requested that her salary "be brought in line with the other leads," all of whom were obviously male, "in the spirit of fair treatment." Regardless of Leise's opinion as to why NikSoft may not have understood her email, the jury was not plainly wrong in finding that her email was "sufficiently clear and detailed for a reasonable employer to understand it" as an assertion of her rights under the EPA. *Minor*, 669 F.3d at 432 (quoting *Kasten*, 563 U.S. at 14). Indeed, NikSoft's CEO admitted that he knew that Leise had "brought a request . . . to be paid the equivalent of people [she] consider[ed] to be [her] counterparts who are of the opposite gender." Thus, the trial court did not err by refusing to set aside the jury's verdict on Leise's retaliation claim based on her alleged failure to prove that she engaged in a protected activity.

B. The Evidence Supports a Finding that Leise Suffered an Adverse Action, and The Trial Court Did Not Err by Denying NikSoft's Pretrial Motion for Summary Judgment

NikSoft asserts that its lawsuits against Leise did not constitute materially adverse actions under the FLSA. According to NikSoft, a lawsuit can constitute a materially adverse action only if it is filed "with a retaliatory motive *and* without reasonable basis in fact or law." NikSoft argues that neither of its lawsuits constituted a materially adverse action because they were filed

with a reasonable basis in fact and law. We hold that NikSoft's arguments are foreclosed by the law of the case under the parties' agreed jury instructions.

Jury instructions "given without objection become the law of the case and thereby bind the parties in the trial court and . . . on [appellate] review." *Boyd v. Weisberg*, 75 Va. App. 725, 736-37 (2022) (alterations in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 461 (2018)). "Even if a party makes a motion to set aside the verdict, 'this does not save him from his failure to object to the instructions which submitted the issues . . . to the jury.'" *Id.* at 737 (alteration in original) (quoting *Smith*, 296 Va. at 462). This is so even if the jury instructions impose "an inappropriate standard." *Id.* (quoting *Smith*, 296 Va. at 462).

NikSoft and Leise agreed to the definition of a materially adverse action under the FLSA. Instruction 33D stated that a materially adverse action is one "serious enough that it well might have discouraged a reasonable worker from requesting equal pay." Instruction 33C clarified that the definition included "actions taken against [Leise] after her employment ended." And, the parties agreed, through Instruction RR1, that "[a]n employer's decision to file a lawsuit *without* a retaliatory motive *and with* a reasonable basis in fact or law is not an adverse action for purposes of retaliation."[12] (Emphases added).

Under the agreed instructions, the jury could have found that NikSoft's lawsuits constituted materially adverse actions if they were filed with a retaliatory motive. Such a finding

---

[12] NikSoft initially asked the circuit court to instruct the jury that "[a]n employer's decision to file a lawsuit with a reasonable basis in fact or law is not an adverse action for purposes of retaliation under the Equal Pay Act." Leise objected to the instruction as an inaccurate statement of law. The trial court noted that case law provided that "an employer's decision to file a lawsuit with a retaliatory motive and without a reasonable basis in fact or law" was an adverse action. NikSoft responded that "the flip side of that would be that a lawsuit that was filed with a reasonable basis would not be retaliatory." The trial court determined that the instruction should also address whether the employer had a retaliatory motive to be "an accurate statement of the law." NikSoft agreed with the trial court, and the trial court gave Instruction RR1 in lieu of NikSoft's proposed instruction.

would not have been plainly wrong given that NikSoft had not sued any former male employee for violating the Non-Compete Agreement and the assurances that Leise gave in response to its cease-and-desist letter. Indeed, NikSoft does not argue that such a finding is inconsistent with the evidence. Therefore, the trial court did not err by refusing to set aside the jury's verdict on Leise's retaliation claim based on her alleged failure to prove an adverse action at trial.

Even though the trial court properly sustained the jury's verdict based on the agreed instructions, NikSoft argues that the trial court nevertheless erred by denying its pretrial motion for summary judgment, which raised the same argument it asserts on appeal. "[S]ummary judgment shall not be entered unless no material fact is genuinely in dispute . . . and the moving party is entitled to such judgment as a matter of law." *Oreze Healthcare LLC v. E. Shore Cmty. Servs. Bd.*, 302 Va. 225, 230 (2023) (first alteration in original) (quoting *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 253 (2017)). "Normally, when a party proffers or agrees to an instruction which is contrary to a position previously argued during trial, the agreed instruction becomes the law of the case, and the party is deemed to have waived its previous objection." *Hale v. Maersk Line Ltd.*, 284 Va. 358, 371 (2012) (quoting *WJLA-TV v. Levin*, 264 Va. 140, 159 (2002)). "However, when the record is clear that the party is not waiving its objection to the prior ruling, but merely proffering or agreeing to an instruction consistent with the trial court's prior ruling, the previous objection will not be waived." *Id.* at 371-72 (quoting *WJLA-TV*, 264 Va. at 159).

NikSoft agreed to jury instructions that defined a materially adverse action to include a lawsuit filed with a retaliatory motive. Those instructions contradicted NikSoft's earlier argument in support of its motion for summary judgment that a lawsuit filed with a reasonable basis in law and fact cannot constitute a materially adverse action as a matter of law. And NikSoft expressly

agreed to amend its own proposed jury instruction, which embodied the argument it raised in support of its motion for summary judgment, to become Instruction RR1, which did not.

The record reflects that NikSoft did not agree to Instruction RR1 because it was consistent with the trial court's prior ruling on its motion for summary judgment. Rather, the trial court denied NikSoft's summary judgment motion because the parties were "arguing over the[] facts"; it did not address whether a lawsuit filed with a reasonable basis in fact and law can constitute a materially adverse action. The agreed jury instructions are thus now the law of the case. *See Hale*, 284 Va. 358.

The record supports that the parties disputed facts regarding whether NikSoft filed its lawsuits with a retaliatory motive when the trial court ruled on its motion for summary judgment. Therefore, the trial court did not err by denying NikSoft's motion because the parties disputed whether NikSoft had committed a materially adverse action under the FLSA. *Oreze Healthcare*, 302 Va. at 230.

### C. The Evidence Supports a Finding that NikSoft's Lawsuits Were Causally Related to Leise's Request for a Raise

"[T]he third element of a *prima facie* case of retaliation . . . requires a showing that 'a causal relationship existed between the protected activity and the adverse employment activity.'" *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (quoting *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 253 (4th Cir. 2015)). One of the parties' agreed jury instructions stated that such a causal relationship "may be shown in many ways," "is . . . not necessarily ruled out by a more extended passage of time," and "may . . . be proven by antagonism shown toward [Leise] or a change in demeanor toward [Leise]." This jury instruction is the law of the case. *Boyd*, 75 Va. App. at 736.

NikSoft asserts that Leise failed to prove that it sued her because she requested a raise. NikSoft, however, admits that a causal relationship can be proven by evidence of retaliatory

animus. Moreover, it does not dispute that Leise introduced such evidence.[13] Indeed, Leise and Perspecta assured NikSoft that she would not violate the Non-Compete Agreement, but NikSoft sued her anyway notwithstanding that it had previously chosen not to sue a former male employee for violating the Non-Compete Agreement. Instead, NikSoft contends that Leise's decision to work for Perspecta "constitute[d] a legitimate intervening event . . . sever[ing] any causal connection."

Simply stated, NikSoft asks this Court to reweigh the evidence and find that it sued Leise because Perspecta hired her and not because she asked for a raise. We decline its invitation. *See Fadness v. Fadness*, 52 Va. App. 833, 842 (2008) ("[R]equesting this Court to simply substitute our judgment of the evidence for that of the trial court is an inappropriate and singularly ineffective appellate argument."). Given NikSoft's concessions, we hold that the jury was not plainly wrong in finding a causal relationship between Leise's request for a raise and NikSoft's decision to sue.

## III. NikSoft's Affirmative Defense to Leise's EPA Claim

"Our 'sole responsibility' in reviewing a challenge to jury instructions 'is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Taylor v. Commonwealth*, 77 Va. App. 149, 166 (2023) (quoting *Molina v. Commonwealth*, 272 Va. 666, 671 (2006)). "A trial court 'has broad discretion over whether to give or deny proposed jury instructions.'" *Id.* (quoting *Huguely v. Commonwealth*, 63 Va. App.

---

[13] NikSoft suggests that Leise's evidence of retaliatory animus could not be considered by the jury because that evidence was not specifically identified in her counterclaim. "Every litigant is entitled to be told in plain and explicit language the adversary's ground of complaint. Like any other rule, however, this principle must be reasonably applied, keeping in mind that its purpose is to prevent surprise." *Bennett v. Sage Payment Sols., Inc.*, 282 Va. 49, 60 (2011) (quoting *Syed v. ZH Techs., Inc.*, 280 Va. 58, 71 (2010)). Here, Leise alleged that NikSoft's decision to sue her was a retaliatory act "actuated by malice, spite, and ill-will." NikSoft therefore had notice that she would introduce evidence supporting her allegation at trial.

92, 129 (2014)). "When an offered instruction is 'a correct statement of the legal principles involved and the trial court, in its discretion, could properly have given the instruction, it does not follow that it was reversible error to refuse it." *Id.* (quoting *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003)). "An instruction must be supported by 'more than a scintilla' of evidence," which is viewed in the light most favorable to the proponent. *Nottingham v. Commonwealth*, 73 Va. App. 221, 228 (2021) (quoting *Turman v. Commonwealth*, 276 Va. 558, 564 (2008)).

"The EPA prohibits gender-based discrimination by employers resulting in unequal pay for equal work." *U.S. Equal Emp. Opportunity Comm'n v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018). It is undisputed that Leise stated a prima facie claim under the EPA. As a result "the burdens of production *and* persuasion shift[ed] to [NikSoft] to show that the wage differential" between Leise's salary and the salaries of her male colleagues was based on a seniority system, a merit system, a pay system based on quantity or quality of output, or any factor other than gender. *Id.*; 29 U.S.C. § 206(d)(1); Minn. Stat. § 181.67(1). These four affirmative defenses to Leise's EPA claim are embodied by Instruction LL in this case.

NikSoft conceded at trial that it did not introduce evidence of a seniority system, merit system, or pay system based on quantity or quality of output. Accordingly, the fourth affirmative defense stated in Instruction LL is the only affirmative defense potentially applicable in this case. To establish that affirmative defense, NikSoft had to "submit evidence from which a reasonable factfinder could conclude not simply that [a factor other than gender] *could* explain the wage disparity, but that [the factor] *d[id] in fact* explain the wage disparity." *Md. Ins. Admin.*, 879 F.3d at 121.

Leise contends that the trial court erred by giving Instruction LL because NikSoft failed to introduce evidence that it set salaries based on any factor other than gender. According to

- 20 -

Leise, NikSoft used the wrap rate to determine an employee's profitability, not salary. She emphasizes that NikSoft had "no specific profit rate" for each employee and claims that NikSoft did not set her salary consistent with the wrap rate. She further claims that NikSoft failed to introduce evidence showing how it determined T.C. and E.G.'s salaries and thus failed to explain the discrepancy in her salary.

Leise's arguments ignore the evidence about NikSoft's business model. The record, when viewed in the light most favorable to NikSoft, shows that NikSoft generated revenue under its contract with USPS by billing USPS for the services of its employees. The maximum amount NikSoft can bill USPS for an employee's services is determined by the employee's labor category. NikSoft cannot unilaterally increase an employee's labor category once the employee had filled a USPS position.

When coupled with NikSoft's desire to operate a profitable business, the foregoing facts demonstrate that NikSoft would not pay an employee more than justified by his or her labor category. Indeed, Niksoft's former general counsel testified that NikSoft's only consideration when setting an employee's salary is "[f]inancial." NikSoft determines whether an employee's salary is profitable by applying the wrap rate and comparing the result to the billing rate associated with the employee's labor category. NikSoft uses the wrap rate to determine the most it can pay an employee while remaining profitable.

The evidence supports the jury's implied finding that NikSoft could not have paid Leise the same as T.C. and E.G. without suffering a financial loss. Thus, the trial court did not err by giving Instruction LL because there was more than a scintilla of evidence that NikSoft paid Leise less than

her male colleagues because of a factor other than gender related to her position and business necessity.[14]  *Taylor*, 77 Va. App. at 166.

IV.  Leise's Attorney Fees

Leise asserts that the trial court erred by sustaining the jury's verdict awarding her zero attorney fees and costs for her retaliation claim.  She contends that the jury had to award her attorney fees and costs as a matter of federal and Minnesota law.  Emphasizing that the jury's award is inconsistent with Barnsback's and Reide's expert testimony, Leise concludes that "it was clear the jury did not understand the law that reasonable attorneys' fees and costs were required to be awarded" if she prevailed on her retaliation claim.

Leise acknowledges that the jury may have found from her testimony that she had not personally incurred any attorney fees or costs to pursue her counterclaims.  Indeed, Leise testified that she was not "responsible" for the attorney fees and costs associated with her counterclaims and had not paid for them "yet."  She contends, however, that her testimony confused the jury because the trial court erroneously precluded evidence of her counterclaim contingency fee agreement as irrelevant.  We agree.

"Relevant evidence is that which has 'any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence.'"  *Arch Ins. Co. v. FVCbank*, 301 Va. 503, 516 (2022) (quoting Va. R. Evid. 2:401).  The parties' expert witnesses agreed that Leise reasonably incurred hundreds of thousands of dollars prosecuting her counterclaims.  Furthermore, both parties introduced evidence that Perspecta had agreed to indemnify Leise for the attorney fees she incurred defending against NikSoft's claims.  Given that

---

[14] Leise also contends that the trial court erred by denying her motion to set aside the jury's verdict rejecting her EPA claim because "there was absolutely no evidence to support" NikSoft's affirmative defense.  Given our holding that there was sufficient evidence to support Instruction LL, the jury was not plainly wrong in finding that NikSoft proved its affirmative defense.  Accordingly, we affirm the trial court's refusal to set aside the jury's verdict.  *Ellis*, 299 Va. at 622.

Leise was not responsible for paying all her attorney fees, the relevant question for the jury was whether she was personally responsible for the attorney fees she incurred pursuing her counterclaims.

According to Leise's proffer, evidence of her counterclaim contingency fee agreement would have shown that her responsibility for her attorney fees was "contingent . . . upon her recovery." That evidence, if properly considered, would have been relevant to Leise's request for attorney fees. Therefore, the trial court abused its discretion by excluding evidence of the counterclaim contingency fee agreement. *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 206 (2022).

Our holding that the trial court erred by excluding evidence of Leise's counterclaim contingency fee agreement does not end our analysis. "[H]armless-error review [is] required in *all* cases." *Moore v. Joe*, 76 Va. App. 509, 516 (2023) (second alteration in original) (quoting *Spruill v. Garcia*, 298 Va. 120, 127 (2019)). "When it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." *Id.* at 516-17 (alteration in original) (quoting Code § 8.01-678). "Thus, '[a]ny error that does not implicate the trial court's subject matter jurisdiction is subject to harmless-error analysis.'" *Id.* at 517 (alteration in original) (quoting *Spruill*, 298 Va. at 127). "In a civil case, the erroneous exclusion of evidence is reversible error when the record fails to show plainly that the excluded evidence could not have affected the verdict." *Barkley v. Wallace*, 267 Va. 369, 374 (2004).

The trial court's evidentiary ruling was not harmless error. The excluded evidence, if admitted, would have provided meaningful context to Leise's lay testimony that she was not "responsible" for her attorney fees and costs and had not paid for them "yet." When viewed in context, the jury could have found that Leise was in fact personally responsible for the attorney

fees and costs she incurred pursuing her counterclaims unless the jury returned a verdict for NikSoft on those claims. Moreover, NikSoft identifies no evidence aside from Leise's testimony supporting the jury's decision not to award Leise any attorney fees or costs.

In sum, the trial court erred by precluding Leise from introducing evidence of her counterclaim contingency fee agreement. Accordingly, we remand the case to the trial court to "allow a reasonable attorney's fee to be paid by [NikSoft], and costs of the action," with respect to Leise's retaliation claim. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

CONCLUSION

For all these reasons, the circuit court's judgment is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*